IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:13-CV-5-RWS |
| ONE 2011 HARLEY DAVIDSON | : | |
| FLHX 103 MOTORCYCLE, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This case comes before the Court on Claimant Alexander's Motion to Dismiss [23][1] and Claimant Alexander's Motion to Strike [29]. After reviewing the record, the Court enters the following Order.

**Background**

This civil forfeiture action arises out of a Federal Bureau of Investigation ("FBI") criminal investigation of the Outlaws Motorcycle Club and affiliated gangs in North Georgia believed to be involved in drug trafficking. (Compl.,

---

[1]Claimant Alexander's Motion is not styled as a motion to dismiss for failure to state a claim, nor is Federal Rule of Civil Procedure 12(b)(6) or a related legal standard cited anywhere in the Motion. Given the content of the Motion, and the last line of the Motion praying for "the Court to dismiss the Complaint because it fails to state a valid forfeiture claim as to Alexander's Motorcycle," (Dkt. [23] at 6) the Court treats the Motion as a motion to dismiss for failure to state a claim.

Dkt. [1] ¶ 10.) The Government's forfeiture Complaint [1] alleges that on July 11, 2012, Claimant Phillip Alexander ("Alexander") met with an undercover FBI agent who "asked Alexander about his willingness to participate in a drug deal, and Alexander willingly volunteered" to provide "police lookout protection" in exchange for $200. (Id. ¶¶ 59-60.) The next day, Alexander arrived at a prearranged location on his 1991 Harley Davidson and "then drove to the final meeting inside the FBI Undercover Employee's vehicle." (Id. ¶¶ 61-62.) At the final meeting, Alexander provided security and police lookout protection. (Id. ¶ 66.)

On August 14, 2012, Alexander and other members of the Outlaws Motorcycle Club were indicted on drug charges. (Id. ¶ 68.) Two days later, the FBI arrested Alexander and seized his 1991 Harley Davidson XLH883 Motorcycle ("1991 Harley Davidson") pursuant to a seizure warrant. (Id. ¶ 69, 72.) On January 7, 2013, the Government initiated this forfeiture action under 21 U.S.C. §§ 881(a)(4) and (6) against numerous Harley Davidson Motorcycles that had been seized as a result of the investigation on the grounds that "they were used, or were intended to be used, to transport or facilitate the transportation, sale, receipt, possession, or concealment of a controlled

2

substance," and that "they were furnished or [were] intended to be furnished in exchange for a controlled substance, that they constitute proceeds traceable to such an exchange, or that they were used or were intended to be used to facilitate the sale or exchange of a controlled substance." (Id. ¶¶ 88-89.) On March 16, 2013, Alexander asked the Court to dismiss the forfeiture claim against his 1991 Harley Davidson.

## Discussion

### I.     Claimant Alexander's Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

3

In addition, there are particular rules governing complaints in forfeiture actions.  Under Rule G(2)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims, a complaint for forfeiture must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  "To satisfy this specificity requirement, the complaint 'must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the Government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance.' "  United States v. Two Parcels of Real Property Located in Russell Cnty., Ala., 92 F.3d 1123, 1126 (11th Cir. 1996) (quoting United States v. $38,000 in U.S. Currency, 816 F.2d 1538, 1548 (11th Cir. 1987)).

"As a general rule, forfeiture is not favored, and statutes providing for forfeiture are strictly construed."  United States v. One 1977 Cadillac Coupe DeVille, 644 F.2d 500, 501 (5th Cir. Unit B 1981).[2]  The relevant forfeiture statute is 21 U.S.C. § 881(a)(4), which provides that "[a]ll conveyances,

---

[2] The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the U.S. Court of Appeals for the Fifth Circuit prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

4

including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances are subject to forfeiture.

Alexander argues that the Government has failed to allege sufficient facts showing a substantial connection between his 1991 Harley Davidson and an illegal drug transaction. (Dkt. [23] at 4.) He argues that forfeiture is not justified because the Government does not allege that he rode the 1991 Harley Davidson to the final meeting point; he rode first to a location where he met an undercover FBI agent and then proceeded to the final meeting in the FBI agent's vehicle. (Claimant Alexander's Mot. to Dismiss, Dkt. [23] at 5.) Thus, according to Alexander, the 1991 Harley Davidson was not used "to transport or facilitate the transportation . . . of a controlled substance." (Id.)

The only case Alexander relies on is United States v. One 1971 Chevrolet Corvette, in which a district court had ordered forfeiture of a vehicle that had been used for a portion of a trip before the driver switched cars and proceeded to the site of a drug deal, much like Alexander did in this case. 496 F.2d 210, 211 (5th Cir. 1974). The Fifth Circuit reversed because the vehicle "lacked the

5

necessary nexus with the contraband transaction to bring it within the forfeiture provision." Id. at 212.

The Government correctly points out, though, that forfeiture in that case was sought under 49 U.S.C. § 781(a)(3), which made unlawful the use of any vehicle "to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article," whereas here the Government seeks forfeiture under 21 U.S.C. § 881. The Fifth Circuit discussed the distinction between these statutes in Cadillac Coupe DeVille, supra. In that case, the Court affirmed forfeiture of a vehicle under § 881 when the vehicle was used to transport a drug dealer and an accomplice to the scene of a drug transaction. 644 F.2d at 503. The car owner, also relying on Chevrolet Corvette, had argued "that the vehicle was not used to transport the cocaine and thus did not facilitate the transaction." Id. at 501.

The Fifth Circuit found the distinction unavailing. After noting the similarities between § 781 and § 881, the Court highlighted two important differences: "§ 881 applies to controlled substances only, while § 781 applies to various types of contraband; and § 881 includes the phrase 'in any manner.'"

6

Cadillac Coupe DeVille, 644 F.2d at 502. Thus, the Court reasoned, Congress intended § 881, which was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, "to have a wider reach than the general contraband forfeiture under 49 U.S.C. § 781." Id. As an "essential part of the law enforcement effort in the area of illegal drugs," the broader forfeiture provision for controlled substances furthers the Comprehensive Act's purpose "to strengthen law enforcement in the area of drug abuse prevention." Id.

The Court then gave two reasons why Chevrolet Corvette was not dispositive of their case: first, the use of the Corvette for only one leg of a trip "was more remote than here where the Cadillac transported both the dealer and courier to the actual site of the transaction"; and second, in Chevrolet Corvette the Government "sought forfeiture under 49 U.S.C. § 781(a)(3) rather than the broader coverage of § 881." Cadillac Coupe DeVille, 644 F.2d at 502. Based on the second reason, the Fifth Circuit distinguished its case from forfeiture cases brought under § 781 where courts limited forfeiture to vehicles that either transported contraband or housed the transaction itself. See id. at 502-03. Because § 881 is broader in scope than § 781 and permits forfeiture "if the conveyance is used in any manner to facilitate the sale," the Fifth Circuit

7

concluded that "use of the vehicle to transport the dealer to the scene forms a sufficient nexus between the vehicle and the transaction to validate forfeiture under 21 U.S.C. § 881." Id. at 503.

Alexander's reliance on Chevrolet Corvette is thus misplaced because that action was brought under § 781. Nevertheless, it is not clear to this Court whether forfeiture under § 881 extends as far as the Government argues. While the Court in Cadillac Coupe DeVille held that § 881 extends beyond the previous forfeiture statute by permitting forfeiture of vehicles used "in any manner" to facilitate a drug sale, the Fifth Circuit also indicated that there is a limit to how far it is willing to reach by acknowledging that the use of a vehicle for part of a trip is more remote than driving a vehicle all the way to the site of the transaction. See id. at 502. The Court did not specify how remote the use of a vehicle would have to be to place it outside the reach of § 881, and no Eleventh Circuit authority since then has addressed forfeiture under § 881 in the context of the present fact pattern: when the vehicle only transports its occupant partway to the site of the drug deal.

Indeed, most cases here and in other Circuits have permitted forfeiture under § 881 primarily in the context of vehicles that transported the dealer to

8

the scene of the transaction or negotiation. See, e.g., United States v. One 1979 Porsche Coupe, 709 F.2d 1424, 1427 (11th Cir. 1983) (finding a substantial connection between a vehicle and a drug transaction when the vehicle was used to transport "the pivotal figure in the transaction" to and from a hotel where drug negotiations occurred); United States v. 1990 Toyota 4Runner, 9 F.3d 651, 651-52 (7th Cir. 1993) (finding a substantial connection when a drug dealer drove his vehicle to a meeting where he arranged the import of heroin from the Philippines); United States v. One 1984 Cadillac, 888 F.2d 1133, 1138 (6th Cir. 1989) (finding a sufficient nexus when a vehicle transported an individual to the scene of an attempted drug transaction); United States v. One 1974 Cadillac Eldorado Sedan, 548 F.2d 421, 427 (2d Cir. 1977) (finding a sufficient nexus when a vehicle transported an individual to the scene of a meeting, even though the anticipated sale did not take place, because the sale was consummated a few days later).

The common thread in each of these cases is that the vehicle was used to transport the defendant directly to the site of some event integral to a drug scheme, be it a drug transaction or negotiations leading to a transaction. These cases are distinguishable from the instant case. Here, Alexander's use of the

9

1991 Harley Davidson is more attenuated from the ultimate drug transaction because he did not drive it all the way to the scene of the deal.

After carefully considering the facts in the present case, this Court finds the difference between this case and the above § 881 cases significant. The Government does not allege that Alexander drove the 1991 Harley Davidson to the site of the actual drug transaction. Even after accepting all of the Government's allegations in its Complaint [1] as true, it appears that the prearranged meeting place where Alexander joined the undercover FBI agent was a point of convenience with no bearing on the actual transaction. The first meeting site did not serve as an integral part of the conspiracy like the meeting site in <u>Cadillac Coupe DeVille</u>, where the drug transaction occurred. No negotiations or agreement between Alexander and the FBI agent took place there, as Alexander had already agreed to provide lookout protection before arriving at the prearranged location. Consequently, no substantive part of the drug deal transpired where Alexander met the FBI agent. Given these circumstances, the Court finds no substantial connection between the 1991 Harley Davidson and any illegal activity because Alexander did not ride the

motorcycle to the scene of the drug transaction.  Therefore, Claimant Alexander's Motion to Dismiss [23] is **GRANTED**.

## II.    Claimant Alexander's Motion to Strike

Claimant Alexander has also filed a Motion to Strike [29] paragraph 81 of the Complaint [1] pursuant to Federal Rule of Civil Procedure 12(f) as "immaterial, impertinent, or scandalous matter."  Because the Court grants Claimant Alexander's Motion to Dismiss [23], Claimant Alexander's Motion to Strike [29] is **DENIED as moot**.

## Conclusion

In accordance with the foregoing, Claimant Alexander's Motion to Dismiss [23] is **GRANTED**, and Claimant Alexander's Motion to Strike [29] is **DENIED as moot**.

   **SO ORDERED**, this   20th   day of September, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)